OPINION OF THE COURT
Bellacosa, J.
The criminal charges in this case stem from allegedly fraudulent efforts to feign compliance with minority business participation requirements in two public works contracts. The People through the State Attorney-General charge defendant Naneo Contracting Corp., acting through its vice-president and codefendant Mikuszewski, with making false representations, in required documents relating to the public works contracts, regarding G.R. Trucking, a supposedly State-approved independent minority-owned subcontractor. It was actually owned by codefendant Gustave Roben, an employee of Naneo Contracting Corp. (Naneo Corp.).
The issue is whether the Grand Jury evidence is legally sufficient to support seven counts of the indictment, the only ones now before us, which havé been dismissed. We conclude that six counts should be reinstated and that the scheme to defraud charge was properly dismissed.
The 16-count indictment in this case emerged from the Attorney-General’s criminal investigation of two Federally funded public works contracts awarded to Naneo Corp. by the New York City Department of Transportation in June 1982— a $4.5 million contract to reconstruct Merrick Boulevard in Queens and a $7.1 million contract to improve a portion of Ocean Avenue in Brooklyn. Under the terms of the contracts and consistent with Federal law, Naneo Corp. was obligated to allot 10% of the work to a State-approved "Minority Business Enterprise” (MBE) and 5% to a State-approved "Women-owned Business Enterprise” (WBE). The contracts also provided that failure to fulfill the MBE/WBE requirements could result in the stoppage of government payment or loss of the contracts altogether or both.
Naneo Corp. was awarded the contracts based in part on its representations that G.R. Trucking was one of the minority-owned businesses with which Naneo Corp. intended to subcontract in satisfaction of its MBE commitment. G.R. Trucking is a one truck-two employee operation owned by Gustave Roben, a native Ecuadorian. He and his wife are the two employees. In April 1983, New York City learned that at all relevant times Roben was a Naneo Corp. employee and concluded that *411 his G.R. Trucking was neither an independent business as required (see, 49 CFR 23.53 [a] [2]) nor a State-approved minority business enterprise. It ceased payment under the contracts.
Allegedly false representations in various officially filed documents regarding G.R. Trucking’s nonaffiliation and certification as a State-approved MBE also generated a criminal investigation and later indictments against defendants Mikuszewski, Naneo Corp. and Roben for the crimes of offering a false instrument for filing, falsifying business records, perjury, making an apparently sworn false statement, attempted grand larceny, and engaging in a scheme to defraud.
On defendants’ motions to dismiss for insufficient evidence, the trial court dismissed nine counts of the indictment against defendants Mikuszewski and Naneo Corp. and three counts against defendant Gustave Roben. After the Appellate Division affirmed the dismissals, codefendant Roben pleaded guilty to a lesser included offense in full satisfaction of his indictment. Thus, only Naneo Corp. and Mikuszewski are left before us on this People’s appeal and only as to seven of the dismissed counts.
A Grand Jury may indict only if the evidence before it is legally sufficient to establish that the accused committed the offense charged and also provides reasonable cause to believe the accused committed the offense (CPL 190.65). On a motion addressed to sufficiency of an indictment (CPL 210.20 [1] [b]), however, the defendant is entitled to a review based on whether there was competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant’s commission of it (CPL 70.10 [1]; People v Jennings, 69 NY2d 103, 115). The evidence must be viewed most favorably to the People, and it need not "provide 'reasonable cause’ to believe that the defendant committed the crime charged” (see, People v Warner-Lambert Co., 51 NY2d 295, 299, citing Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 70.10, at 348 [1971]; see also, People v Brewster, 63 NY2d 419, 422). The courts below appear to have mistakenly held the People to the higher "reasonable cause” standard and, thus, should not have dismissed counts 3, 4, 7, 8, 13 and 14. With respect to count 16, the Attorney-General failed to provide any proof with respect to an essential element of the crime of scheme to defraud first degree and, thus, the count was properly dismissed.
*412 Scheme to Defraud
Count 16 charges the defendants with violating Penal Law § 190.65, which provides in part: "1. A person is guilty of a scheme to defraud in the first degree when he: (a) engages in a scheme constituting a systematic ongoing course of conduct with intent to defraud ten or more persons or to obtain property from ten or more persons by false or fraudulent pretenses, representations or promises, and so obtains property from one or more of such persons” (emphasis added). This count was dismissed because defendants’ conduct did not fall within the reach of this particularized scheme to defraud statute. The Attorney-General urges reinstatement, claiming that defendants’ scheme to obtain the two contracts by falsely claiming compliance with the MBE requirements constituted "a systematic ongoing course of conduct” sufficient to satisfy this statute’s language and purpose. He adds that the 10 or more victims requirement elevating the offense to a felony has been satisfied because the scheme was intended to defraud not only three governmental agencies involved in the administration of the public projects but also 10 or more other bidding contractors.
We conclude the Grand Jury evidence was legally insufficient with respect to this count because there was no proof that defendants intended to defraud or obtain property by false representations with respect to 10 or more persons within the meaning of this statute.
The scheme to defraud crime (Penal Law §§ 190.60, 190.65) was added to the Penal Law in 1976 (L 1976, ch 384). Under the relatively new theft statute, the misdemeanor offense is elevated to felony level first degree if the intent is to defraud or obtain property by false representations with respect to "ten or more persons” and property is obtained from "one or more” such persons (see also, L 1986, ch 515; Penal Law § 190.65 [1] [b] [another circumstance raised to felony level but not relevant here]; see also, L 1986, ch 833; Penal Law § 195.20 [eliminating the multiple victims requirement when the scheme to defraud is perpetrated against the government, also not charged here]).
The legislative history indicates that the applicable 1976 statute was designed to aid in the prosecution of consumer fraud schemes where many victims are bilked mainly of small amounts of money (see, Sponsor’s Mem, 1976 NY Legis Ann, at 35-36). The enhanced prosecutorial option was thought to *413 be needed because under the then existing offense choices these types of consumer scams often escaped successful prosecution under the larceny-by-false-promise statute (Penal Law § 155.05 [2] [d]), which required that each victimization be separately pleaded and proved. The scheme to defraud concept borrowed the traditional larceny category of false pretense and false representation, but shifted the focus away from the amount of loss suffered by a particular victim and placed it instead on the nature and extent of the scam.
While the new scheme to defraud crime was derived in part from the Federal mail fraud statute (18 USC § 1341; see, Sponsor’s Mem, 1976 NY Legis Ann, at 35-36), it differs significantly from the latter by additionally requiring that property actually be obtained from at least one of the persons sought to be defrauded (see, Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 190.60, at 425).
In this case, while the People’s evidence before the Grand Jury may have been sufficient to establish that the one "person” from whom property was actually obtained was the government or a few units of the government, there was absolutely no evidence that defendants made false representations to other bidding contractors, or even that other bidding contractors had knowledge of the false representations made to the government or that they were in any way defrauded of property rights or interests. None of those putative bidders were involved in the defendants’ scam or victimized in any way contemplated by this special statute. Since the People failed to supply any evidence to establish defendants’ intent to defraud multiple victims, an essential element under this particular statute, the scheme to defraud count cannot stand.
The Six Other Dismissed Counts
Counts 3, 4, 13 and 14 of the indictment are predicated on a misrepresentation made on Roben’s application for MBE status which Mikuszewski, acting as vice-president of Naneo Corp., filed with the New York State Department of Transportation. The Attorney-General maintains that Roben’s affidavit filed with the application included false information; to wit, Roben denied he was "affiliated” with Naneo Corp. when, in fact, he was a Naneo Corp. employee and that Naneo Corp. through its officer Mikuszewski was aware of the falsity. Counts 3 and 4 charge the defendants with offering a false *414 instrument (i.e., Roben’s affidavit) for filing (Penal Law § 175.35). Count 3 alleges that Roben’s affidavit had been filed with New York State Department of Transportation in April 1983 and count 4 alleges that the same document had been sent to the New York State Department of Transportation in May 1982. The same document serves as the basis for the perjury charge (Penal Law § 210.10 [count 13]), and the charge of making an apparently sworn false statement (Penal Law § 210.40 [count 14]).
The falsity of Roben’s statement is not at issue nor is he before us as a party. The courts below concluded, however, that the Attorney-General had submitted no proof connecting defendants Naneo Corp. and Mikuszewski to knowledge of Roben’s false statement and held that count 4 should be dismissed for the additional reason that there was no evidence the affidavit was in fact filed in 1982.
All four of these counts (Nos. 3, 4, 13 and 14) require proof that these two defendants knew that Roben’s affidavit was false (see, Penal Law § 175.35 [offering a false instrument for filing]; Penal Law § 210.10 [perjury]; Penal Law § 210.40 [making an apparently sworn false statement]). Even at the Grand Jury stage, the Attorney-General cannot satisfy his burden by establishing that only Roben knowingly made a false statement. The proof must additionally show that Mikuszewski and Naneo Corp. through its officer had knowledge of the falsity and acted illegally with respect to it.
Viewed favorably to the People, the evidence is sufficient for the Grand Jury to have inferred that defendant Mikuszewski as vice-president of Naneo Corp. knew of the falsity in Roben’s affidavit. The evidence before that body included testimony that defendant Mikuszewski oversaw all of Naneo Corp.’s projects in 1982 and 1983; that he directly participated in filling out various forms with respect to G.R. Trucking’s MBE status; that Mikuszewski himself volunteered to fill out Roben’s G.R. Trucking document entitled "Minority Contractor Participation Letter of Intent”, which was designed to be completed by the minority contractor; and that Mikuszewski personally forwarded Roben’s affidavit containing the false statements with an attached cover letter bearing Mikuszewski’s signature to the New York City Department of Transportation although Naneo Corp. was not even responsible for filing that affirmation.
Based on this evidence, the Grand Jury under traditional *415 standards of review at this stage of a criminal proceeding had enough to find criminal charges resting on Mikuszewski’s knowledge, which may also be imputed to Naneo Corp., of the falsity in their own employee’s affidavit that he was not "affiliated” with Naneo Corp.
Further, the evidence was legally sufficient to support count 4 charging that the Roben affidavit was also filed in 1982. Three relevant items of evidence were presented on this point. First, the Mikuszewski April 13, 1983 cover letter enclosing the Roben affidavit expressly stated that the affidavit previously had been mailed to the New York State Department of Transportation in 1982. Second, a Naneo Corp. employee testified in effect to the 1982 filing. Third, a New York City Department of Transportation official testified that the affidavit had been filed.
To be sure, count 4 may not rest solely upon Mikuszewski’s 1983 statement that the affidavit had been filed in 1982, and the Attorney-General was obliged to supply corroborative evidence that the offense charged was in fact committed (CPL 60.50). That required minimal corroborative evidence appears in the Naneo Corp. employee’s testimony that Roben swore to the affidavit on May 21, 1982 and "the document was then filed by Naneo” with the State of New York (emphasis added). This slender reed is sufficient for the CPL 60.50 requirement of " 'production of some proof, of whatever weight, that a crime was committed’ [citations omitted]” (People v Lipsky, 57 NY2d 560, 571; see also, People v Booden, 69 NY2d 185, 187).
Counts 7 and 8 of the indictment involve two documents labeled "Minority Business Enterprise Compliance Reports”. These forms were signed by defendant Mikuszewski, were filed on or about March 13, 1983, and contain the allegedly false statement that "the Contractors listed below are approved MBE/WBE Contractors” (emphasis supplied). The Attorney-General maintains that G.R. Trucking was not "an approved MBE contractor” in March of 1983 and that defendants Mikuszewski and correspondingly Naneo Corp. were aware of this falsity proffered in their compliance reports.
The courts below concluded that the Grand Jury evidence was insufficient to establish Naneo Corp.’s or Mikuszewski’s knowledge in March 1983 that G.R. Trucking was not an approved MBE. The key documentary evidence on this point was a letter from a New York City Department of Transportation official dated May 28, 1982 informing Naneo *416 Corp. its "Schedule of Participation by Minority Business Enterprise [had been] conditionally approved” (emphasis added). The courts interpreted the portion of the letter stating the city’s "conditional approval” of the participation schedule as conferring on G.R. Trucking State approval as a MBE contractor. They are on their face two very different things. Naneo Corp. and Mikuszewski cannot be excused on that out-of-context reading from the knowledge ingredient needed for the criminal accusation based on the false representation of State-approved MBE status. Reliance and focus on the first clause of the first sentence of the city’s letter is misplaced. It states: "Your attached Schedule of Participation by Minority Business Enterprise is conditionally approved”. The rest of the sentence and the rest of the letter, all also in evidence before the Grand Jury, are unequivocal that conditional approval of the participation selection schedule does not constitute State approval of the proposed MBE contractor. The letter goes on to state that the city’s approval of the schedule is "predicated upon * * * the * * * MBE/WBE companies being certified as such by the New York State Department of Transportation” and that "[t]his conditional approval only recognizes your good faith efforts in attaining the contract goals, but in no way grants MBE/WBE status to [G.R. Trucking]” (emphasis added). Thus, the total letter, viewed favorably to the People on a sufficiency challenge, supplies the very ingredient the courts below found to have been negated by the letter, i.e., evidence sufficient to prove the knowing and intentional nature of defendants’ false submissions in the compliance reports regarding G.R. Trucking’s MBE State-"approved” status as of March 1983.
In sum, the record of the Grand Jury minutes supplies legally sufficient evidence in this case to support counts 3, 4, 7, 8, 13 and 14 of the indictment; we are likewise satisfied on that same over-all record that the People failed to present legally sufficient evidence of all the elements needed to sustain count 16, charging a scheme to defraud in the first degree.
Accordingly, the order of the Appellate Division should be modified to the extent of reinstating counts 3, 4, 7, 8, 13 and 14 of the indictment and, as so modified, it should be affirmed.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Hancock, Jr., concur.
Order modified, etc.