OPINION OF THE COURT
 

 Smith, J.
 

 The issue presented by this appeal is whether a juvenile delinquency petition, filed after a “buy and bust” operation, which accuses a youth of criminal sale and possession of a controlled substance is legally sufficient where the petition is accompanied only by the supporting deposition of the “buy” officer who states that the presence of the controlled substance was established by a “NIK” field test. We conclude that the petition was legally sufficient.
 

 It is alleged that on April 15, 1996, at approximately 4:20 p.m. on 103rd Street between First and Second Avenues in Manhattan, respondent sold heroin to an undercover police officer. Respondent was taken into custody and a petition was filed in Family Court charging him with juvenile delinquency in that he committed acts constituting criminal sale of a controlled substance in the third and fifth degrees and criminal possession of a controlled substance in the third, fifth and seventh degrees. Accompanying the petition was a supporting deposition of an undercover police officer who stated, in relevant part, that:
 

 “I observed the Respondent sell me a narcotic drug/ controlled substance, to wit, heroin, * * * with intent to sell the same, in that the [Appellant] handed to me four glassines containing heroin in exchange for which I handed the [Appellant] $20 U.S. currency pre-recorded buy money. * * *
 

 “Pursuant to field testing the above item, using the
 
 *433
 
 ‘NIK test (Mecke Reagent test), which is a reliable test routinely used in the field to determine the presence of controlled substances, I determined that the above items contain heroin. I have received extensive training in the identification of controlled substances/narcotics drugs and training in the recognition and determination of whether or not substances are or contain heroin using the ‘NIK test, in that I have previously performed at least twenty ‘NIK tests on known and unknown samples. I performed the ‘NIK field test for the above items in accordance with the set procedures which I received at an extensive training program and followed each of the procedures as specified.”
 

 Respondent filed a motion to dismiss the petition arguing that the officer’s identification of the narcotic was insufficient to establish that the juvenile had illegal drugs in his possession. Respondent’s motion to dismiss was denied. At the fact-finding hearing respondent and the presentment agency stipulated that the laboratory report indicating that the substance in question was heroin would be admitted into evidence. The court subsequently placed respondent with the Division for Youth. The Appellate Division modified the Family Court’s order, and we now affirm.
 

 Because “the juvenile delinquency petition is the sole instrument for the commencement, prosecution and adjudication of the juvenile delinquency proceeding * * * [it] must comport with the statutory jurisdictional requisites of the Family Court Act”
 
 (Matter of Neftali D.,
 
 85 NY2d 631, 635). Indeed, we have stated that “a stringent test [is appropriate] when construing challenges to the facial sufficiency of a juvenile delinquency petition to assure that there is a valid and documented basis for subjecting the juvenile to prosecution”
 
 (id.,
 
 at 636). Under the Family Court Act, a petition is legally sufficient when the verified petition and any supporting depositions not only “provide reasonable cause to believe that the [juvenile] committed the crime or crimes charged” (Family Ct Act § 311.2 [2]) but also “establish, if true, every element of each crime charged and the [juvenile’s] commission thereof’ (Family Ct Act § 311.2 [3]). Thus, the presentment agency must “set forth in the petition ‘sufficient evidence to warrant a conviction, if unexplained or uncontradicted’ ”
 
 (Matter of Jahron S.,
 
 79 NY2d 632, 639 [citations omitted]).
 

 Respondent’s primary argument is that the undercover officer’s supporting deposition describing the results of the “NIK”
 
 *434
 
 field test does not establish the existence of a controlled substance, an element of the crimes charged in the petition. This very issue was addressed by the Court, albeit in a different context, in
 
 People v Swamp
 
 (84 NY2d 725).
 

 In
 
 Swamp,
 
 we examined whether an indictment charging possession of cocaine was supported by legally sufficient evidence when, in the absence of a formal laboratory report, the evidence before the Grand Jury consisted solely of the results of a preliminary field test indicating the presence of cocaine
 
 (id.,
 
 at 728).
 
 *
 
 The Court reasoned that “Illegally sufficient evidence — defined as ‘competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant’s commission thereof (CPL 70.10 [1]) — means simply a prima facie case, not proof beyond a reasonable doubt”
 
 (id.,
 
 at 730). The People are required to provide “a ‘reliable basis’ for inferring the presence of a controlled substance * * * [and] [m]ore than conclusory assertions that the defendant possessed a drug are required”
 
 (id.,
 
 at 730). Ultimately, the Court held that an uncontradicted field test result could provide legally sufficient evidence of the presence of a drug at the Grand Jury stage, although meeting the threshold standard of legal sufficiency is not the same as establishing guilt beyond a reasonable doubt at trial
 
 (id.,
 
 at 732).
 

 The Court’s reasoning in
 
 People v Swamp
 
 applies here to the juvenile delinquency petition. The undercover officer’s supporting deposition in this case, and his reliance on the “NIK” field test to establish the existence of a controlled substance, constituted legally sufficient evidence. Respondent has shown no principled reason to hold that the results of a “NIK” field test suffice to present a prima facie case before a Grand Jury, but fail to do the same in a juvenile delinquency proceeding. Indeed, this Court has explicitly stated that the prima facie standard applies not only to indictments
 
 (see, People v Swamp, supra,
 
 at 730), but also to petitions in a juvenile delinquency proceeding and to informations
 
 (see, Matter of Jahron S.,
 
 79 NY2d 632, 639,
 
 supra).
 

 We also reject respondent’s argument that the undercover officer’s assertions of expertise in the supporting deposition were conclusory and insufficient, as a matter of law, to constitute
 
 *435
 
 prima facie evidence of possession of heroin. The officer indicated that he was given glassine envelopes, that he had been trained in the identification and recognition of controlled substances, including heroin, and that he had conducted approximately 20 “NIK” field tests. We note, first, that “prima facie evidence of the presence of a controlled substance need not be based on expert testimony. All that is required is a ‘reliable basis’ for inferring such presence”
 
 (People v Swamp, supra,
 
 at 733;
 
 see also, People v McRay,
 
 51 NY2d 594, 601 [“This (C)ourt has consistently recognized that a glassine envelope is a ‘telltale sign of heroin’.”]). Thus, like the testimony presented in
 
 Swamp,
 
 the undercover officer’s supporting deposition in the instant case “tended to corroborate the preliminary Scott-Reagent test, a field test routinely relied upon by law enforcement to determine the presence of a controlled substance”
 
 (id.,
 
 at 731).
 

 Second, questions regarding the ability of the officer conducting the field test go to the weight and not the sufficiency of the evidence
 
 (see, People v Swamp, supra,
 
 at 733 [questions of the adequacy of field test are for the Grand Jury to resolve]). Furthermore, although the reliability of scientific evidence can affect its admissibility when the reliability is challenged at trial, at the preliminary stage where a court must determine whether the evidence is legally sufficient, the presentment agency is not required to anticipate such an objection and establish the field test’s general acceptance within the scientific community
 
 (see, Frye v United States,
 
 293 F 1013;
 
 see also, People v Swamp, supra,
 
 at 730 [holding that “NIK” tests are facially competent evidence]).
 

 If, during the fact-finding hearing, the presentment agency chose to rely solely upon the results of a field test and did not seek to admit into evidence the results of a formal laboratory test, then, upon objection, the accuracy and intrinsic reliability of the field test would have to be established beyond a reasonable doubt and could be subject to attack. Here, however, respondent’s counsel stipulated into evidence the existence of a laboratory report, and further stipulated that the chemist would testify that the substance sold by respondent tested positive for heroin.
 

 Accordingly, the order of the Appellate Division should be affirmed, without costs.
 

 Chief Judge Kaye and Judges Bellacosa, Levine, Ciparick and Wesley concur.
 

 Order affirmed, without costs.
 

 *
 

 A Grand Jury may indict an individual when “(a) the evidence before it is legally sufficient to establish that such person committed such offense * * * and (b) competent and admissible evidence before it provides reasonable cause to believe that such person committed such offense” (CPL 190.65 [1]).